IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MESIVTHA TIFERETH JERUSALEM,

                Plaintiff,

v.

SOVEREIGN BANK and STATEN ISLAND
BANK & TRUST,

                Defendants.

Docket No. 12-cv-1301 (WFK) (MDG)

**SOVEREIGN BANK, N.A.'S RESPONSE TO PLAINTIFF'S NOTICE OF OBJECTION TO DEFENDANT'S CONFIDENTIAL DESIGNATION OF CERTAIN DOCUMENTS**

Defendant Sovereign Bank, N.A. (the "Bank"), through its undersigned counsel, in response to Plaintiff's Notice of Objection to Defendant's Confidential Designation of Certain Documents, dated July 16, 2012 (the "Objection"), states as follows:

## PRELIMINARY STATEMENT

Plaintiff Mesivtha Tifereth Jerusalem ("MTJ") made clear to the Bank and to this Court in letters and in conference that it intended to disseminate the Bank's discovery disclosures as it saw fit. Apart from being a clear abuse of the discovery process, MTJ's threats were plainly an *in terrorem* tactic to leverage the Bank. With the Court's assistance, the parties entered into a stipulation and protective order. Pursuant to the protective order, certain documents could be marked "Confidential" and were subject to restrictions regarding disclosure.

As part of its disclosure, the Bank produced to MTJ its Loss Prevention and Security Department's ("LP&S") entire file regarding this matter and, appropriately, marked it "Confidential." In the Objection, MTJ objects to virtually the entirety of the Bank's LP&S file being designated confidential. The protective order, however, makes presumptively confidential

"policies and procedures, including *internal investigative information*." Accordingly, the LP&S file is properly designated "Confidential."

More generally, LP&S is responsible for the Bank's security, including preventing fraud against the Bank and its customers. Permitting MTJ to disseminate the Bank's LP&S's investigative file would compromise that security. If nothing else, the protective order was designed to prevent exactly that from happening. The Bank respectfully requests that the Court protect the Bank's LP&S file pursuant to the protective order and deny, in part, the Objection as set forth below.

## BACKGROUND

On May 22, 2012, counsel for the parties communicated by telephone concerning a proposed protective order, which is customary in civil litigation. On May 22, 2012, the Bank advised the Court that counsel for MTJ was unwilling to enter into the protective order because MTJ wanted to be able to disseminate the contents of the Bank's discovery to, for example, the *New York Post*. (Exhibit A.) Later that day in a letter to the Court, counsel for MTJ doubled down on his statements by advising the Court that the contents of the Bank's discovery may well "warrant media attention for the public good." (Exhibit B.) Put differently, MTJ wanted to freely disseminate the Bank's discovery, notwithstanding the Bank's defenses to MTJ's claims.

With the Court's intervention and assistance, the parties have in place a Stipulated Protective Order, dated as of June 1, 2012 (the "Protective Order"). An executed copy of the Protective Order is attached hereto as Exhibit C. The Bank respectfully requests that the Court "so order" the enclosed Protective Order for ECF Filing.

On or about July 11, 2012, the Bank produced 906 pages of responsive information to MTJ.[1] As part of its initial production, the Bank produced its entire LP&S file related to the Bank's investigation of the forgery allegations contained in the Complaint. The Bank produced the 430-page LP&S file without redaction and designated it "Confidential" pursuant to the Protective Order. No good deed goes unpunished.

On July 16, 2012, MTJ filed the Objection, citing certain documents it believes should not be designated "Confidential." Almost all of the information that is the subject of MTJ's Objection is the Bank's LP&S file. Indeed, MTJ has objected to 94% of the Bank's "Confidential" designations, notwithstanding the fact that, with few exceptions, all plainly reflect communications to, from and/or including the Bank's LP&S team investigating this matter.

## ARGUMENT

A. The Bank's LP&S File Is Properly Designated "Confidential"

The Protective Order clearly contemplated that the Bank's LP&S file could properly be designated "Confidential." The Protective Order provides as specific examples of documents that are presumptively entitled to confidential protection "confidential or proprietary policies and procedures, *including internal investigative information*." (Exhibit C, ¶ 1 (emphasis added.)) Thus, the plain language of the Protective Order makes clear that the Bank's LP&S file is properly designated as "Confidential."

Important policy considerations also weigh heavily in favor of protecting the Bank's policies and procedures regarding investigating alleged fraud. LP&S is responsible for, among other things, investigating the forgery that is alleged in the Complaint. More generally, LP&S is responsible for the security of the Bank, both in terms of physical security and

---

[1] The Bank has since produced an additional 101 pages of responsive information, which is not the subject of the Objection.

3

preventing fraud against the Bank and its customers. Allowing the dissemination of information about how LP&S conducts an investigation would compromise that security.

The Bank does not seek to withhold from discovery the LP&S file. Indeed, the Bank has produced to MTJ its LP&S file in its unredacted entirety. Rather, the Bank simply wishes to prevent dissemination of the policies and procedures of a Bank investigation – dissemination that could compromise future security. In light of MTJ's stated intention to disseminate the Bank's discovery, allowing the Bank to maintain the confidentiality of its LP&S file and procedures takes on even greater importance. The Court's broad discretion and authority to govern discovery pursuant to the Federal Rules of Civil Procedure clearly enable it to preserve the Bank's confidentiality with regard to these documents.

Apart from the documents identified below, for which the Bank will provide MTJ with a non-confidential version, all of the documents that MTJ seeks to have made non-confidential are communications to, from, and/or including members of the Bank's LP&S Department or that discuss the LP&S Department's investigative procedures and are part of the Bank's LP&S file. Specifically, the LP&S members that take part in the communications that the Bank believes should remain confidential are: Barbara Blanchette, Laura Boulay, Christine Ramoutar, Joseph Gilroy, Nelson Perea, Silvia Sarra, and Kelly G.Yee.

The communications to, from, and/or including members of the Bank's LP&S Department or that discuss the LP&S Department's investigative procedures, with the exceptions noted below, are the documents bearing the control numbers SB 120 to SB 203, SB 206 to SB 213, SB 216 to SB 252, SB 291 to SB 300, SB 304 to SB 321, SB 326, SB 331 to SB 335, SB 337 to SB 343, SB 352 to SB 356, SB 367 to SB 395, SB 403 to SB 419, SB 422, SB 428 to SB 442, SB 494 to SB 502 and SB 505 to SB 512. In addition, documents bearing control numbers

4

SB 516 to SB 598 consist of the Bank's Case Report, Case Notes and Check Fraud and Incident Reports, which are compilations of information developed and written by LP&S team members.

The Bank respectfully believes that the documents bearing these control numbers, which are the subject of the Objection, are properly designated "Confidential."

B. <u>Documents the Bank Will Produce Without a Confidentiality Designation</u>

After further review, certain documents contained in the Bank's LP&S file, which are also the subject of the Objection, do not contain communications to, from or including the LP&S team or reveal LP&S investigative procedures. These documents, therefore, arguably do not reflect the Bank's investigative policies or procedures. The Bank will produce non-confidential versions of these documents to MTJ as follows: SB 253 to SB 257, SB 267 to SB 290, SB 301 to SB 303, SB 327 to SB 330, SB 336, SB 344 to SB 351, SB 357 to SB 366, SB 396 to SB 400, SB 420 to SB 421, SB 503 to SB 504 and SB 513 to SB 515. In addition, the Bank inadvertently marked as confidential certain account opening documents, bearing control numbers SB 109 to SB 119, which are the subject of the Objection. The Bank will produce non-confidential versions of these documents as well.

**RELIEF SOUGHT**

The Bank respectfully requests that the Court issue an Order denying MTJ's objection to the "Confidential" designation of the documents bearing control numbers SB 120 to SB 203, SB 206 to SB 213, SB 216 to SB 252, SB 291 to SB 300, SB 304 to SB 321, SB 326, SB 331 to SB 335, SB 337 to SB 343, SB 352 to SB 356, SB 367 to SB 395, SB 403 to SB 419, SB 422, SB 428 to SB 442, SB 494 to SB 502, SB 505 to SB 512 and SB 516 to SB 598. In the alternative, the Bank requests a hearing so that it can be heard on the important subject of

protecting the confidentiality of this information. In addition, the Bank respectfully requests that the Court "so order" the Protective Order signed by the parties and attached as Exhibit C.

Date: New York, New York
August 15, 2012

                         SCHIFF HARDIN LLP

                         By: /s/ Mathew B. West
                                Mathew B. West (MW 9117)
                                mwest@schiffhardin.com

666 Fifth Avenue
New York, New York 10103
(212) 753-5000

*Attorneys for Sovereign Bank, N.A.*

NY\51203604.2